## JOSEPH VERIHA AND CHRISTINA F. VERIHA, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7099–10.          Filed August 8, 2012.

During 2005, P–H was the sole owner of JVT, a C corporation in the trucking business, and he actively participated in JVT's business. JVT leased the tractors and trailers used in its business from TRI, an S corporation in which P–H owned 99% of the shares of stock, and JRV, a single-member LLC in which P–H was the only member. The lease of each tractor and each trailer was governed by a separate contract. During 2005, TRI generated net income and JRV generated a net loss. On their 2005 joint return Ps treated the net income from TRI as passive income and treated the net loss from JRV as a passive loss. R determined that, pursuant to sec. 1.469–2(f)(6), Income Tax Regs. (sometimes referred to as the "self-rental rule or the recharacterization rule"), each tractor and each trailer should be considered a separate "item of property" and that the income P–H received from TRI should be recharacterized as nonpassive income. Ps contend that the entire collection of tractors and trailers is one "item of property". *Held*: For purposes of sec. 1.469–2(f)(6), Income Tax Regs., each individual tractor or trailer was an "item of property" and the income P–H received from TRI was subject to recharacterization.

*Amy L. Barnes* and *Robert Edward Dallman*, for petitioners.

*Laurie B. Downs*, for respondent.

OPINION

WELLS, *Judge*: Respondent determined a deficiency in petitioners' 2005 Federal income tax of $258,785 and an accuracy-related penalty pursuant to section 6662(a) of $51,757.[1] Respondent concedes that petitioners are not liable for the penalty. The issue we must decide is whether the income petitioner Joseph Veriha received from an S corporation in which he owned 99% of the stock should be recharacterized as nonpassive income pursuant to section 1.469–2(f)(6), Income Tax Regs. (sometimes referred to as the "self-rental rule or the recharacterization rule").

*Background*

The parties submitted the instant case fully stipulated, without trial, pursuant to Rule 122. The parties' stipulations of fact are hereby incorporated by reference and are found accordingly. Petitioners are husband and wife who resided in Wisconsin at the time they filed their petition.

Mr. Veriha is the sole owner of John Veriha Trucking, Inc. (JVT), a corporation with its principal place of business in Wisconsin. JVT was a C corporation during 2005 but has since elected S corporation status. Petitioners were both employed by JVT during 2005, and Mr. Veriha materially participated in JVT's business. JVT is a trucking company that leases its trucking equipment from two different entities, Transportation Resources, Inc. (TRI), and JRV Leasing, LLC (JRV). The trucking equipment JVT leases consists of two parts: a motorized vehicle (tractor) and a towed storage trailer (trailer).

TRI is an S corporation in which Mr. Veriha owns 99% of the stock; his father owns the remaining 1%. TRI is an equipment leasing company with its principal place of business in Wisconsin. TRI owns only the tractors and trailers that it leases to JVT. During 2005, TRI and JVT entered into 125 separate lease agreements, one for each tractor or trailer leased. TRI's only source of income during 2005 was the leasing agreements with JVT.

JRV is a single-member limited liability company, and Mr. Veriha is its sole member. JRV is an equipment leasing com-

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code of 1986 (Code), as amended, and Rule references are to the Tax Court Rules of Practice and Procedure.

pany that owns only the tractors and trailers that it leases to JVT. During 2005, JRV and JVT entered into 66 separate lease agreements, one for each tractor or trailer leased. JRV's only source of income during 2005 was the leasing agreements with JVT.

Each tractor was leased to JVT as one unit, and each trailer was leased to JVT as one unit. The monthly rate for leasing each tractor was determined by the tractor's age, and the monthly rate for leasing each trailer was determined by the type of trailer. During 2005, the tractors and trailers owned by TRI and JRV were all parked in the same lot and were intermingled. All the tractors were painted the same yellow color, and all received the same scheduled maintenance. JVT paid the expenses for all of the tractors and trailers and insured all the tractors and trailers under the same blanket insurance policy. In determining which tractor or trailer to use on a route, JVT made no distinction between those TRI owned and those JRV owned. Similarly, when it assigned drivers, JVT did not make any distinction on the basis of the ownership of the tractor or trailer.

During 2005, TRI generated net income, which it reported to Mr. Veriha on a Schedule K–1, Partner's Share of Income, Deductions, Credits, etc. Petitioners treated that net income as passive income on their return.

During 2005, JRV generated a net loss, which petitioners reported on their Schedule C, Profit or Loss From Business. Petitioners treated that loss as a passive loss on their return.

Respondent issued a notice of deficiency to petitioners in which respondent determined that petitioners' income from TRI should be recharacterized as nonpassive income pursuant to section 1.469–2(f)(6), Income Tax Regs. Petitioners timely filed their petition in this Court.

## *Discussion*

Section 469(a) disallows the passive activity loss of an individual taxpayer. Passive activity losses are suspended until the taxpayer either has offsetting passive income or disposes of the taxpayer's entire interest in the passive activity. Sec. 469(b), (g). Congress enacted the passive activity rules in response to concern about the widespread use of tax shelters

in which taxpayers were avoiding tax on unrelated income. *See Schaefer v. Commissioner*, 105 T.C. 227, 230 (1995).

The Code defines "passive activity" as an activity involving the conduct of a trade or business in which the taxpayer does not materially participate. Sec. 469(c)(1). However, the term "passive activity" generally includes any rental activity, regardless of material participation. Sec. 469(c)(2), (4). Section 469 does not define "activity". *See Schwalbach v. Commissioner*, 111 T.C. 215, 223 (1998). However, the Secretary has prescribed regulations pursuant to section 469(l) that specify what constitutes an "activity". Section 1.469–4(c), Income Tax Regs., sets forth rules for grouping activities together to determine what constitutes a single "activity". That regulation provides: "One or more trade or business activities or rental activities may be treated as a single activity if the activities constitute an appropriate economic unit for the measurement of gain or loss for purposes of section 469." Sec. 1.469–4(c)(1), Income Tax Regs. Whether activities constitute an "appropriate economic unit" depends on the facts and circumstances. Sec. 1.469–4(c)(2), Income Tax Regs.

Section 469(d)(1) defines "passive activity loss" as "the amount (if any) by which—(A) the aggregate losses from all passive activities for the taxable year, exceed (B) the aggregate income from all passive activities for such year." A passive activity loss is computed by first netting items of income and loss within each passive activity and then subtracting aggregate income from all passive activities from aggregate losses from all passive activities. *See id.*; sec. 1.469–2T, Temporary Income Tax Regs., 53 Fed. Reg. 5686 (Feb. 25, 1988).

In carrying out the provisions of section 469, section 469(l)(2) authorizes the Secretary to promulgate regulations "which provide that certain items of gross income will not be taken into account in determining income or loss from any activity (and the treatment of expenses allocable to such income)". While the general rule of section 469(c)(2) characterizes all rental activity as passive, section 1.469–2(f)(6), Income Tax Regs., requires net rental income received by the taxpayer for use of an item of the taxpayer's property in a business in which the taxpayer materially participates to be treated as income not from a passive activity, and provides:

(f)(6) Property rented to a nonpassive activity.—An amount of the taxpayer's gross rental activity income for the taxable year from an item of property equal to the net rental activity income for the year from that item of property is treated as not from a passive activity if the property—

(i) Is rented for use in a trade or business activity * * * in which the taxpayer materially participates * * *.

A taxpayer's activities include activities conducted through C corporations that are subject to section 469. Sec. 1.469–4(a), Income Tax Regs.

Section 1.469–2(f)(6), Income Tax Regs., explicitly recharacterizes as nonpassive net rental activity income from an "item of property" rather than net income from the entire rental "activity". Section 469 and the regulations thereunder distinguish between net income from an "item of property" and net income from the entire "activity", which might include rental income from multiple items of property. Even when items of property are grouped together in one activity, section 1.469–2(f)(6), Income Tax Regs., still applies to recharacterize rental income from an item of property as nonpassive income. *Carlos v. Commissioner*, 123 T.C. 275, 282 (2004).

The parties disagree about the definition of the phrase "item of property". In the notice of deficiency, respondent determined that the income from TRI should be recharacterized as nonpassive income. The notice of deficiency does not explain the rationale for that recharacterization, and petitioners contend that the notice of deficiency determined that each fleet of tractors and trailers TRI and JRV owned was a separate "item of property" and that the income from TRI should be recharacterized pursuant to section 1.469–2(f)(6), Income Tax Regs. However, on brief respondent contends that the notice of deficiency determined that each individual tractor or trailer is an "item of property" but that respondent elected not to challenge the offsetting of income and losses with respect to each tractor or trailer within TRI or JRV. In contrast, petitioners contend that the entire collection of tractors and trailers, i.e., all the tractors and trailers whether owned by TRI or JRV, constitutes a single "item of property".

Because neither the Code nor the regulations define the phrase "item of property", we follow the established rule of construction that an undefined term is given its ordinary meaning. *See FDIC v. Meyer*, 510 U.S. 471, 476 (1994); *Gates*

*v. Commissioner*, 135 T.C. 1, 6 (2010). When seeking to ascertain the ordinary meaning of a term, a court may look for assistance to sources such as dictionaries. *Muscarello v. United States*, 524 U.S. 125, 127–132 (1998); *Gates v. Commissioner*, 135 T.C. at 6.

Webster's Third New International Dictionary 1203 (2002) provides the following definitions of the term "item": "an individual thing (as an article of household goods, an article of apparel, an object in an art collection, a book in a library) singled out from an aggregate of the individual things * * * *item* applies chiefly to each thing in a list of things or in a group of things that lend themselves to listing (an item in a laundry list) (each item of income) (an item in an inventory)." Webster's Ninth New Collegiate Dictionary 643 (1990) similarly defines "item" as "a separate particular in an enumeration, account, or series". The American Heritage Dictionary of the English Language 930 (2000) defines "item" as "[a] single article or unit in a collection, enumeration, or series." Black's Law Dictionary 908 (2009) defines "item" as "[a] piece of a whole". In all of the foregoing dictionary definitions "item" is defined as a separate thing that is part of a larger collection. Those definitions support respondent's contention that each separate tractor or trailer is an "item of property". Indeed, the articulation of petitioners' argument requires the use of a term such as "collection", "group", or "whole", all of which serve to distinguish the collection of tractors and trailers from any single tractor or trailer, i.e., any single "item of property". Accordingly, we conclude that each individual tractor or trailer is an "item of property" within the meaning of section 1.469–2(f)(6), Income Tax Regs.

However, as one court has noted, the definition of the term "item" is context specific:

[T]he dictionary definition * * * is of little value because "items" is a relative term whose contours are constructed by context. Only when measured by the remaining particulars in a given classification can one discern whether a designation is an item. Thus, we are left * * * with determining the meaning of "items" as used in the statute without an accompanying list of associated particulars. That being so, reasonable persons could differ on the degree of specificity inherent in the term. [*United States v. Zheng*, 768 F.2d 518, 523 (3d Cir. 1985).]

Although we conclude that each tractor and each trailer is a separate item of property, we can conceive of cases in which

the result would be different. For example, if JVT had always used each tractor with one particular trailer and if the lease agreements between JVT and TRI and JRV were for particular tractor-trailer pairs, then each tractor-trailer combination might be considered an "item of property".

Petitioners contend that accepting respondent's argument that each tractor and each trailer is an "item of property" would compel absurd results such as, for example, that a business renting tools would have to recharacterize income with respect to each individual tool. However, that would not necessarily be the case; rather, it would be the case only if the context suggested that each tool should be considered an "item of property". If, for instance, the business leased tool sets and only tool sets, then each set might be considered an "item of property". If, on the other hand, as in the instant case, the lease of each tool were governed by a separate lease agreement with a separate price, then we would not consider absurd the result that the business would have to recharacterize income on that basis.

Petitioners contend that respondent's position is at odds with that taken by the Commissioner in *Shaw v. Commissioner*, T.C. Memo. 2002–35, in which the Commissioner reclassified as nonpassive the net rental income from various properties, including "over the road trailers". In *Shaw*, for purposes of section 1.469–2(f)(6), Income Tax Regs., the Commissioner treated all of the over the road trailers as one item of property. We are not persuaded by petitioners' contention. We have repeatedly held that, even with respect to the same taxpayer, the Commissioner is not bound in any given year to allow the same treatment as in prior years. *See, e.g.*, *Pekar v. Commissioner*, 113 T.C. 158, 166 (1999); *Murphy v. Commissioner*, 92 T.C. 12, 15 (1989); *Lee v. Commissioner*, T.C. Memo. 2006–70. As we stated in *Murphy v. Commissioner*, 92 T.C. at 15: "The erroneous past actions of respondent cannot be relied upon to allow * * * [the treatment of an item] not permitted by statute." Certainly, the same would be true as to different taxpayers. Accordingly, we conclude that respondent is not bound to treat petitioners' tractors and trailers as one item of property even though the Commissioner *may have* treated the over-the-road trailers in *Shaw* as one item of property. Moreover, it is not even clear that, in *Shaw*, the Commissioner *actually* treated all of the

over-the-road trailers as one item of property. Indeed, the Commissioner's treatment of the trailers in *Shaw* is consistent with respondent's position in his brief that, although respondent considers each individual tractor or trailer a separate item of property, respondent is electing not to challenge petitioners' offset of the income and losses from each item of property within TRI and JRV.

Petitioners further contend that, within the trucking industry, the phrase "item of property" typically refers to an entire fleet of trucks. However, petitioners cite no authority for that proposition, and we find it implausible. Indeed, even within the context of the instant case, Mr. Veriha's decision to hold the entire fleet of tractors and trailers under the title of two different entities is inconsistent with the proposition that the entire fleet is viewed as a single "item of property". Moreover, that proposition is also inconsistent with the fact that JVT entered into a separate lease agreement with TRI or JRV for each tractor and each trailer it leased. Indeed, those separate lease agreements strongly suggest that JVT, TRI, and JRV viewed each of the tractors or trailers as a separate "item of property".

As we stated in *Shaw v. Commissioner*, T.C. Memo. 2002–35, a taxpayer "must accept the tax consequences of his business decisions and the manner in which he chose to structure his business transactions." Or, as the Supreme Court has stated: "[W]hile a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not, and may not enjoy the benefit of some other route he might have chosen to follow but did not." *Commissioner v. Nat'l Alfalfa Dehydrating & Milling Co.*, 417 U.S. 134, 149 (1974) (internal citations omitted).

On the basis of the foregoing, we conclude that each individual tractor and each trailer was a separate "item of property" within the meaning of section 1.469–2(f)(6), Income Tax Regs. However, because respondent has not contested petitioners' netting of gains and losses within TRI, only TRI's net income is recharacterized as nonpassive income.[2]

---

[2] We note that this result is necessarily more favorable to petitioners than the result would have been had respondent contended that it was necessary for the income from each tractor or trailer within TRI and JRV to be recharacterized as nonpassive.

In reaching these holdings, we have considered all the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

*Decision will be entered under Rule 155.*